**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**THE HUNTINGTON NATIONAL BANK,**

|  |  |  |
|---|---|---|
| **Plaintiff,** | | **Case No. 2:07-cv-378** |
| | | **JUDGE GREGORY L. FROST** |
| **v.** | | **Magistrate Mark R. Abel** |

**JP MORGAN CHASE BANK, NA, et al.,**

> **Defendant.**

### OPINION AND ORDER

This matter is before the Court for consideration of a May 24, 2007 motion to remand filed by Plaintiff, The Huntington National Bank (Doc. # 7); a memorandum in opposition filed by Defendants, two branches of JP Morgan Chase Bank, NA (Doc. # 10), and a reply memorandum filed by Plaintiff (Doc. # 12).  For the reasons that follow, the Court finds the motion to remand well taken.

### I.  Background

Plaintiff, The Huntington National Bank, is a banking institution with its primary place of business in Columbus, Ohio.  Defendants, two branches of JP Morgan Chase Bank, NA, are banking institutions that also do business in Ohio.  On March 30, 2007, Plaintiff filed suit against Defendants in the Franklin County Court of Common Pleas.  (Doc. # 3.)  Plaintiff's Complaint presents eleven causes of action predicated on Defendants' alleged failure to return eleven checks to Plaintiff in accordance with the "midnight deadline rule" codified in Ohio Rev. Code § 1304.28.  (Doc. # 3 ¶¶ 4-124.)

Defendants subsequently removed the state court action to this federal forum on April 27,

1

2007.  (Doc. # 2.)  Plaintiff has since moved to remand the action to state court (Doc. # 7) and,

the parties having completed briefing, that motion is now ripe for disposition.

## II.  Discussion

Plaintiff argues that a remand is appropriate because the Complaint in this case presents

only issues of state law.  The bank asserts that Defendants cannot avoid this fact and create a

basis for removal by raising as defenses the Expedited Funds Availability Act ("EFAA"), 12

U.S.C. § 4991 et seq., and Regulation CC, 12 C.F.R. § 229.1 et seq.

Defendants in turn argue that this case presents "embedded" substantial questions of

federal law because the EFAA provides a federal private right of action and a federal remedy.

They also argue that the meaning of the EFAA is in dispute between them, that the federal

statutory scheme is not a "back door" to state-court action, and that the EFAA does not offend

federalism.

The parties' dispute implicates both well-settled law and arguably unsettled law on the

issue of removal.  Among the well-settled law involved, it is axiomatic that a defendant may

remove to federal court an action initially brought in a state court that could have been heard

originally in a federal court.  28 U.S.C. § 1441(b).  If the federal court finds that it lacks subject

matter jurisdiction over the case, it must remand the case.  28 U.S.C. § 1447(c).  Federal courts

must also construe removal statutes narrowly, resolving uncertainties in favor of remand.  *Burns*

*v. Windsor*, 31 F.3d 1092, 1095 (11th Cir. 1994).

The United States Supreme Court has recognized that "[a]s a general rule, absent

diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege

a federal claim."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).  The Supreme Court

also recognized that when a complaint pleads no federal claims, a party can remove a state claim based on federal question jurisdiction "in *only* two circumstances–when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption."  *Id*. at 8 (emphasis added).

In order to determine whether a claim arises under federal law, a court will examine the "well-pleaded" allegations of the complaint.  The well-pleaded complaint rule provides that a cause of action arises under federal law only if a plaintiff's properly pleaded complaint affirmatively alleges a federal question; in other words, the complaint's statement of a cause of action must show that it is based upon federal law or the Federal Constitution.  *See id.* at 6; *Horowitz* v. *Marlton*, 116 F. Supp. 2d 551, 553 (D.N.J. 1999).  Moreover, when both federal and state law claims are available, a plaintiff's decision to proceed exclusively under state law does not give rise to federal jurisdiction.  *See Caterpillar v. Williams*, 482 U.S. 386, 392 (1987).

Some courts have recognized that the artful pleading doctrine provides two possible exceptions to the "well pleaded" complaint rule, thereby permitting removal where a plaintiff "artfully pleads" a state claim even though no federal question appears on the face of the complaint.  *Little v. Purdue Pharma*, 227 F. Supp. 2d 838, 853 (S.D. Ohio 2002).  The first exception is the complete pre-emption doctrine.  Successful removal under this doctrine depends upon the availability of federal law so sweeping in nature that it completely does away with any state cause of action.  *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Defendants expressly disavow that they are relying on this exception.  (Doc. # 10, at 4 ("The 'complete preemption' exception to the general rule that a defense based on federal law does not afford federal question jurisdiction is ***not*** at issue here.").)

3

The second possible exception to the well-pleaded complaint rule–and the exception upon which Defendants rely–is the substantial federal question exception.  Under this exception, which leads this Court into less-settled removal law, a state law cause of action actually arises under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. of Calif. v. Constr. Laborers Vacation Trust for S. Calif.*, 463 U.S. 1, 9 (1983).  The mere presence of a federal issue in a state cause of action, however, does not automatically confer federal question jurisdiction; rather, the federal issue must be of sufficient weight to be considered substantial.  *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

The application of this doctrine has not been uniform.  For example, two circuit courts have held that complete pre-emption is the *only* exception to the well-pleaded complaint rule.  *See, e.g.*, *Waste Control Specialists, L.L.C. v. Environcare of Texas, Inc.*, 199 F.3d 781, 783 (5th Cir. 2000); *M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991).  The United States Supreme Court also eroded the substantial federal question exception in *Merrell Dow*, and the Supreme Court's rationale in the aforementioned *Beneficial National Bank* arguably did not resolve much of the confusion and uncertainty surrounding the validity of the substantial federal question exception.  Although only the dissent targeted this point, the *Beneficial National Bank* majority effectively reconsidered removal jurisprudence.  By recognizing removal *only* in cases involving a congressional mandate or complete preemption, the Court arguably eliminated the substantial federal question exception.  The *Beneficial National Bank* majority characterized the complete preemption inquiry as asking whether the state law cause of action is in reality based on federal law and cited two instances of complete

4

preemption–both of which concerned federal statutes that provide the exclusive cause of action for the claim asserted.  *Id.*, 539 U.S. at 8.  Adding to the confusion surrounding the exception is that the Supreme Court then reinforced the viability of the substantial federal question exception in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) (holding that the issue of the meaning of a federal tax provision supported removal).

After *Merrell Dow* and prior to *Beneficial National Bank*, the Sixth Circuit Court of Appeals recognized that even though a complaint does not expressly state a federal cause of action, it may in some cases invoke federal jurisdiction.  *Long v. Bando*, 201 F.3d 754, 757 (6th Cir. 2000).  The *Long* court recognized the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if resolution of that federal question is necessary to the resolution of the state-law claim.  *Id*. at 759 (citing *International Coll. of Surgeons,* 522 U.S. at 164).  Since *Beneficial National Bank*, the Sixth Circuit has continued to recognize the existence of removal predicated on a substantial federal question. *See, e.g., Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 552-53 (6th Cir. 2006); *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 554 (6th Cir. 2005).

Sixth Circuit precedent therefore directs application of substantial federal question jurisprudence here.  Accordingly, the Court concludes that Defendants are unable to sustain the improper removal from state court.

In reaching this conclusion, the Court recognizes that the instant case is analogous to *Key Bank U.S.A., N.A. v. First Union National Bank of Florida*, 234 B.R. 827 (M.D. Fla. 1999).  In *Key Bank*, the district court addressed a factual scenario in which one bank had brought suit in

5

state court against another for the alleged wrongful denial of the first bank's return, or refusal, of drafts presented for payment. The refusing defendant bank had removed the action to federal court and the plaintiff bank sought a remand. The district court examined the complaint and considered the EFAA before concluding that (1) no federal question appeared on the face of the complaint because the plaintiff bank had relied solely on state law for its causes of actions, (2) there was no artful pleading disguising the fact that the complaint was actually federal in character because there was a lack of applicable preemption, and (3) the defendant bank's assertion of a federal basis in its removal and in the briefing failed to invoke federal jurisdiction. *Id.* at 831.

In the case *sub judice*, review of the Complaint similarly indicates a lack of grounds for removal. First, Plaintiff has limited its causes of action to Ohio Rev. Code § 1304.28 and has not attempted to allege a federal cause of action in its complaint. The Complaint on its face does not present grounds for removal.

Second, there is also no artful pleading disguising the federal nature of the pleading because there is no preemption here. The EFAA and Regulation CC can indeed theoretically preempt Ohio's codification of UCC § 4-208; the federal statutory scheme explicitly provides that the EFAA and any related regulations "supercede any provision of the law of any State, including the Uniform Commercial Code as in effect in such State, which is inconsistent with this chapter or such regulations." 12 U.S.C. § 4007(b). But there is no inconsistency here creating preemption.

Defendants posit that the EFAA and Regulation CC will control the outcome of this action. As Plaintiff correctly notes, however, this is simply the assertion of a defense; the federal

law does not constitute an element of Plaintiff's claims.

The mere possibility that the federal law could generally supercede state law does not transform the specific *lack of conflict* present here into a vehicle for removal.  The Court recognizes Defendants' citation to comment to Ohio Rev. Code § 1304.02, which provides in part:

> [A]pplicable federal law may supercede provisions of this Article.  One federal law that does so is the Expedited Funds Availability Act, 12 U.S.C. § 4001 et seq., and its implementing Regulation CC, 12 CFR Pt. 229. . . . [T]he provisions of the EFAA and Regulation CC control with respect to checks.  For example, . . . the midnight deadline may be extended (Regulation CC, Section 229.30(c)).

Ohio Rev. Code § 1304.02, Official Comment 1.  Defendants argue that this comment indicates that the EFAA and Regulation CC "wholly displace the UCC provisions relied on by [Plaintiff] in its Complaint."  (Doc. # 10, at 2.)  The cited comment is somewhat confusing insofar as it suggests, when read broadly, that the federal law constituting the EFAA *always* displaces state law, but then proceeds to give an example of where the federal law *sometimes* extends a state deadline that is *not* always displaced.  In order to have meaning, the comment must be read to indicate that the EFAA potentially displaces state law under specific, limited circumstances.

The federal law provides some help on this point.  Plaintiff directs this Court to Regulation CC's official comment, which provides that the midnight rule codified in Ohio Rev. Code § 1304.28 survives within the federal framework.  12 C.F.R., pt. 229, app. E, § XVI(A)(9)(a) ("Except for the extension permitted by § 229.30(c), . . . this section does not relieve a paying bank from the requirement for timely return (i.e., midnight deadline) under U.C.C. 4-301 and 4-302, which continue to apply.").  The state requirement therefore co-exists with the federal statutory and regulation requirements (with some courts holding that the federal

scheme extending under specific limited circumstances–but not obviating–the midnight deadline rule). *See Farm Credit Servs. of Am. v. Am. State Bank*, 339 F.3d 764, 772 (8th Cir. 2003) ("The Fed could have done away with the UCC midnight deadline altogether, viewing the duty of expeditious return as a complete replacement for the more mechanical test of Article 4. However, a decision was made to retain the midnight deadline as an additional incentive for quick return of dishonored checks. Therefore, instead of displacement, we have another example of overlay." (quoting 1 Barkley Clark & Barbara Clark, The Law of Bank Deposits, Collections and Credit Cards ¶ 8.14[2][b] at 8-52 (Rev. Ed. 2002) (footnotes omitted))); *First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 475 (7th Cir. 1999) ("Regulation CC extends the UCC's deadline, known in the vernacular as the 'midnight deadline.' "); *United States v. Payment Processing Ctr., LLC*, 461 F. Supp. 2d 319, 326 (E.D. Pa. 2006) ("As recently as the 2006 amendment to Regulation CC, the Board of Governors of the Federal Reserve System reaffirmed the significance of the UCC's finality rule and its midnight deadline as 'fundamental and valuable features of the check collection process.' "); *Farmers Deposit Bank v. Bank One*, No. Civ. A. 3:04-43-JMH, 2005 WL 3455979, at *3 (E.D. Ky. Dec. 16, 2005) ("In addition to its Kentucky "midnight deadline," a payor bank must also meet federal deadlines under Regulation CC, 12 C.F.R. pt. 229."); *In re AppOnline.com., Inc.*, 296 B.R. 602, 609 n.5 (Bankr. E.D.N.Y. 2003) ("***the 'midnight deadline' under the UCC has not been preempted by Regulation CC***"); *Farm Credit Servs. of Am. v. Am. State Bank*, 212 F. Supp. 2d 1034, 1040-41 (N.D. Iowa 2002) ("[T]he state law requirements under the UCC are additional requirements to those imposed by Regulation CC."). Thus, rather than construing the EFAA to "wholly displace" the state-codified version of the U.C.C., Ohio courts have tried midnight deadline/late return cases based

8

on a breach of Ohio Rev. Code § 1304.28 without even addressing the EFAA.  *See, e.g., U.S. Bank, N.A. v. Huntington Nat'l Bank*, No. 04AP-349, 2004 WL 2892505 (Ohio App. 10th Dist. Dec. 14, 2004).  The state courts have also recognized breach of the state midnight deadline as a state cause of action even in light of Regulation CC.  *See, e.g., First Nat'l Bank & Trust Co. of Treasure Coast v. Belmont Nat'l Bank*, No. 00 BA 10, 2001 WL 15937 (Ohio App. 7th Dist. Jan. 4, 2001).

Third, Defendants invoke federal issues only in the removal and the remand briefing. Injecting a federal question such as the one here into the state-law claims fails to transform the action into one arising under federal law.  *Key Bank*, 234 B.R. at 830 (quoting at *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987)).  And the fact that the EFAA and Regulation CC may inform this litigation does not mean that their involvement present a sufficiently weighty issue to be substantial.  This is not a situation in which the Complaint even implicitly asks this Court to decide the constitutionality of the federal scheme or asks this Court to declare whether preemption exists.  Rather, this is a private dispute between two parties that potentially implicates federal law without presenting an issue of substantial federal importance.

Given the foregoing, the Court concludes that (1) there is no complete preemption necessitating removal, and (2) the substantial federal question exception is inapplicable here because there is no *substantial* federal issue presented in light of the non-conflicting relationship between the federal and state law and the nature of the federal issues potentially involved in this action.  It is the nature and not the mere existence of a federal issue that informs the removal of this action.  The presence of a federal issue does not itself equal federal jurisdiction, and the meager construction of the federal statutes and regulation cited (as opposed to an inquiry into the

constitutionality of the federal law or other such weightier issue) is of insufficient substance, or

substantial weight, to create arising under, or federal question, jurisdiction warranting removal.

*See Miller v. Norfolk and Western Ry. Co.*, 834 F.2d 556, 562-63 (6th Cir. 1987) (citing *Moore*

*v. Chesapeake & Ohio Ry.,* 291 U.S. 205 (1934))).  *See also Merrell Dow*, 478 U.S. at 814 n.12.

The Supreme Court has recognized that one bank may sue another in state court, and this case

falls into that category.  *Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264,

275-76 (1996).  Accordingly, the Court concludes that based on all the foregoing reasons,

removal was improper in this case.

　　　As an aside, the Court also notes that, although the propriety of the removal is set at the

time of the removal and based on the pleading, that Defendants' own representations undercut

their arguments.  Defendants state that they have complied with the EFAA and Regulation CC

and that "despite [Plaintiff's] allegations to the contrary asserted in its Complaint, [Defendants]

processing and return of the checks at issue also conformed to the midnight deadline as found in

Ohio's version of the UCC."  (Doc. # 10, at 4.)  Thus, if this Court could look beyond the

Complaint, Defendants have conceded that the state law claims turn on the facts–because they

purportedly met the state deadline–and not on federal law–because their meeting the deadline

would not implicate the federal law potentially extending that deadline.  Defendants are therefore

arguing that removal is appropriate because the federal law displaces the state law while

concurrently representing that they have complied with the state law so as to preclude

application of the federal law.

10

### III. Conclusion

The Court **GRANTS** Plaintiff's motion and **REMANDS** this cause to the Franklin

County Court of Common Pleas.  (Doc. # 7.)

**IT IS SO ORDERED**.

         /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

11